**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
**(PHILADELPHIA)**

| | | |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | |
| 400 WALNUT ASSOCIATES, L.P. | ) | Case No. 10-16094 (SR) |
| | ) | |
| Debtor. | ) | |
| | ) | Related Docket No's. 99, 100 |

**OBJECTION OF 4TH WALNUT ASSOCIATES, L.P. TO THE MOTION OF THE DEBTOR FOR APPROVAL OF DISCLOSURE STATEMENT AND FOR THE FIXING OF DATES FOR FILING OF ACCEPTANCES, REJECTIONS OR OBJECTIONS TO THE DEBTOR'S PLAN OF REORGANIZATION**

4th Walnut Associates, L.P. (the "4th Walnut"), by and through its undersigned counsel, files this objection to the Motion of the Debtor for Approval of Disclosure Statement and for the Fixing of Dates for Filing of Acceptances, Rejections or Objections to the Debtor's Plan of Reorganization [Docket No. 100] (the "Motion"), and in support hereof respectfully represents as follows:

**BACKGROUND**

1.      On July 23, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").   No trustee or examiner has been appointed, nor has an official committee of unsecured creditors been appointed in this case.

2.      4th Walnut is a secured creditor of the Debtor.  As of the Petition Date, the Debtor remained outstanding on obligations to 4th Walnut pursuant to a loan, in the original principal amount of $13,125,000.00 (the "Loan") which was memorialized by, among other things, a Multifamily Note in the original principal amount of $13,125,000.00, and also dated February 20, 2004 (the "Note") and further secured by

that certain Multifamily Mortgage, Assignment of Rents and Security Agreement (the

"Mortgage," together with the Note and all documents executed in connection therewith,

the "Loan Documents") encumbering that certain property known as and located at 400-

414 Walnut Street, Philadelphia, Pennsylvania (the "Property").

3.      On October 21, 2010, the Debtor filed its plan (the "Plan") [D.I. No. 98],

disclosure statement (the "Disclosure Statement") [D.I. No. 99] and the instant Motion

[D.I. No. 100].  Over one month later, and six days before the objection deadline, the

Debtor filed exhibits (the "Exhibits") to the Disclosure Statement on November 23, 2010.

4.      4th Walnut respectfully objects to the approval of the Disclosure Statement

as set forth below.

**OBJECTION**

5.      The standards for this Court's approval of the Disclosure Statement are set

forth in 11 U.S.C. § 1125 which provides, in relevant parts, as follows:

> (b)     An acceptance or rejection of the plan may not be
> solicited after the commencement of the case under this
> title from a holder of claim or interest with respect to such
> solicitation, unless, at the time of or before such
> solicitation, there is transmitted to such holder the plan or a
> summary of the plan, and a written disclosure statement
> approved, after notice and a hearing, by the court as
> containing adequate information.

11 U.S.C. § 1125(b). (Emphasis added).

Furthermore,

> (a)     In this section -
>
> (1) "adequate information" means information of a kind,
> and in sufficient detail, as far as is reasonably practicable in
> the light of the nature and history of the debtor and the
> condition of the debtor's books and records, that would
> enable a hypothetical reasonable investor typical of holders
> of claims or interests of the relevant class to make an

2

informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan; …

11 U.S.C. § 1125(a).

The Disclosure Statement fails to meet the requirements of 11 U.S.C. § 1125

6.      The Disclosure Statement does not contain adequate information as required by 11 U.S.C. § 1125(b) because, among other things, it fails to provide sufficient information with respect to the Debtor's projected financial activities and/or operations. In addition, the Disclosure Statement fails to provide any information on how the Plan will be funded, fails to describe the potential recovery on Article 5 claims, and fails to provide a valid liquidation analysis showing what creditors would receive were the Debtor to liquidate in a Chapter 7 proceeding.

7.      In the Disclosure Statement, the Debtor describes how, under a Master Lease Agreement (as described more fully in the Disclosure Statement)[1] with 400 Walnut Greentree Associates, L.P. ("Greentree"), Greentree would collect rents from third party tenants, pay operating costs related to the Property, and remit any remaining funds to the Debtor.  To assist in this process, Greentree hired Turchi, Inc. to manage and operate the building.  The Debtor indicates its intention to continue utilizing the services of Turchi, Inc. and states that the Property "has a reasonable prospect of generating revenues sufficient to meet the obligations of the Reorganized Debtor under the Plan," but does not provide any support for that conclusion.  Furthermore, the Debtor provides no basis for its income projections going forward.

---

[1] The Master Lease Agreement is no longer in place.  While the parties take differing positions with respect to the circumstances terminating the Master Lease Agreement, for the purposes of this Objection, it is only important that it is no longer in effect.

PHIL1 1292145-3

8.     The Debtor's projected expenses are significantly underestimated.  For example, in Exhibit C to the Disclosure Statement, "Financial Projections of the Debtor," the Debtor contemplates a 100% occupancy rate in July 2010 compared to a current occupancy rate of between 70 and 80%.  To start, without a basis for the projection, 4th Walnut questions the accuracy of such an increase.  However, assuming that such an increase is realistic, the Debtor does not provide for an increase in any related expenses: the Debtor's Financial Projections contemplate reducing  payroll by approximately half, understate marketing expenses (based on past history) and provide for no "make ready" expenses associated with lease turnovers or any capital improvement reserves.  In addition, the projected Real Estate Tax does not reflect the tax abatement phase out[2] and a possible reassessment with the forecasted increase to maximum residential capacity and the lease-up of the retail portion of the building.

9.     In addition to understated expenses, the Debtor overstates estimated revenue.  The commercial space at the Property, which has been vacant for more than two years, is forecasted to be leased and generating rental income in six months; there is no basis for such projection, especially in consideration of today's retail market.  The market rent is overstated while the capital and commissions needed to lease the space are understated, as there are no  tenant improvements or leasing commissions in the projections with respect to the retail space.  Furthermore, the Financial Projections do not provide for concessions on the rental units.  It is believed that the Debtor is currently marketing units with rental concessions, but the Projections do not include any rent-concession revenue reduction in 2011 or beyond.  In addition, as the revenue is increased 3% in each of the years 2013, 2014 and 2015, there is no corresponding cost reflected to

---

[2] Without the abatement, taxes could increase threefold.

achieve this increase in the form of increased expense, referred to in the apartment industry as "loss to lease."   Although the Projections provide for late fee income, they do not provide for the cost of bad debt (industry standard is in the 1% range).

10.     The Disclosure Statement and Exhibits do not provide any information on when the next real estate tax payment is due, much less how it will be funded.  Nor is there any information provided regarding the funding for the accrued payments, or how a deficiency during the year will be accommodated.

11.     Other than stating that '[o]n or before the Effective Date, Turchi shall advance… the monies required to make the payments due…" *see Disclosure Statement,* p. 8, the Debtor provides no information about the Plan funding, including information about Mr. Turchi's financial ability to fund millions of dollars in claims on the Effective Date and beyond.   It is unclear whether he intends to fund the Plan himself or to arrange financing to do so.   Regardless, the Disclosure Statement is completely silent as to Turchi's financial wherewithal to advance the funds.  Similarly, the Disclosure Statement also contemplates a scenario under which the Debtor will refinance the Property on or before March 1, 2011, but neither the Disclosure Statement or the subsequently filed Exhibits thereto provide any information whatsoever on its ability to secure such financing.

12.     While the Disclosure Statement provides for the preservation of "any preference claims, fraudulent conveyance claims or other claims, which it may have against any creditor or other party under the Bankruptcy Code or other applicable law," *Id.*, it does not describe these claims or provide any information about the value or recoverability of the potential causes of action.

PHIL1 1292145-3

13.     The stated value of the Property in the Debtor's Liquidation Analysis states no basis for its conclusion as to the value of the Property.  Furthermore, the Debtor provides no basis for the estimated $250,000 in "Professional Fees" and uses an inflated 7% cost of sale.  Most importantly, the amount of 4th Walnut's secured claim is not accurate.  4th Walnut has a validly filed secured proof of claim in the amount of $15,267,261.00, which is deemed allowed since there is no pending objection to the claim.   The Liquidation Analysis is flawed due to its reliance on incorrect and outdated information.

14.     The Disclosure Statement as filed contains absolutely no reliable information regarding the value of the Property. Upon information and belief, the Debtor has obtained an appraisal of the property but has not included any value listed therein in the disclosure statement.  In the absence of any adequate financial information, the Disclosure Statement fails to provide information that would allow creditors to make an informed decision about the Plan.

15.     The Disclosure Statement also fails to adequately address the feasibility of the Plan.  This lack of information is crucial to the evaluation of the plan and, without it, the Disclosure Statement fails to meet the requirements of 11 U.S.C. § 1125.

16.     For example, the Debtor appears to contend that 4th Walnut is undersecured, as the estimated value of the Property by any measure is less than 4th Walnut's claim.  It is unclear how the Plan intends to treat the unsecured portion of 4th Walnut's claim or whether or not the Debtor will be able to fund a distribution on the unsecured portion of the claim.

6

17.     Furthermore, the Plan does not contemplate treatment of 4th Walnut's claim should 4th Walnut make an election under 11 U.S.C. § 1111(b) to have its entire claim treated as secured.  The Debtor has not provided information on the interest payments it would be required to pay 4th Walnut on the Plan Effective Date should 4th Walnut make such election, nor has the Debtor provided for alternative treatment of 4th Walnut should such election be made.  The Debtor has not proven that the Plan is feasible should 4th Walnut make such election.

18.     While woefully lacking any information that would assist creditors in considering the feasibility and confirmability of the Plan on one hand, on the other hand the Disclosure Statement is rife with information that is unnecessary, self-serving and inaccurate.  Such information can be misleading to creditors who are considering the Plan.  For example, *inter alia*, the Disclosure Statement incorrectly states the principal balance of the loan that 4th Walnut purchased from Sovereign Bank.  In addition, the Debtor has failed to provide evidence of the oral forbearance on the loan allegedly granted by Sovereign.  The information regarding the alleged forbearance is misleading and interferes with a creditor to make an informed judgment of the Plan under 11 U.S.C. § 1125.

The Disclosure Statement and Plan fail to meet the requirements of 11 U.S.C. § 1129(a)(1)

19.     A plan of reorganization must comply with 11 U.S.C. § 1129(a)(1) in order to be confirmed.  If a plan of reorganization does not meet those requirements, the disclosure statement accompanying the plan must not be approved.  Here, the Plan fails to meet the requirements, thus neither the Plan not the Disclosure Statement should be approved.

7

PHIL1 1292145-3

20.     The Plan cannot be confirmed because, as described above, the Debtor has shown from the information in the Disclosure Statement that it is not feasible and that confirmation is not unlikely to be followed by liquidation or need for further financial reorganization.    11 U.S.C. § 1129(a)(11).    In particular, the Debtor has provided no evidence in support of its financial projections nor any information to support that the Plan can even be funded as proposed.

21.     The Plan is not confirmable with its current classification of the claim of RAIT Partnership, L.P. ("RAIT").    Specifically, RAIT is an unsecured creditor being treated as a secured creditor under the Plan.    This separate classification and disparate treatment of RAIT under the Plan is precluded by 11 U.S.C. 1123(a)(4), which provides that holders of similar claims must be treated the same unless a claimant agrees to a less favorable treatment of its claim.    Rait is being treated more favorably than the other unsecured creditors under the Plan and the Debtor has failed to show that the other unsecured creditors agree to the distribution scheme.    Furthermore, the Disclosure Statement does not disclose the fact that the Debtor granted RAIT a mortgage on the Property to secure the alleged indebtedness just two weeks before the Petition Date.

22.     Furthermore, in order to confirm the Plan, the Debtor must show that each class of claims or interests (a) has accepted the Plan or  (b) is not impaired under the Plan.    11 U.S.C. § 1129(a)(8).    If that requirement is not met, the Plan must meet the cramdown requirements of 11 U.S.C. 1129(b).    Here, the Plan fails to meet these requirements, and cannot be confirmed.

8

The Disclosure Statement and Exhibits were not timely filed

23.     Pursuant to Rule 3017 of the Federal Rules of Bankruptcy Procedure, the Debtor is required to provide 28 days notice to the parties in interest to consider the Disclosure Statement.  The Debtor filed its Disclosure Statement on October 21, 2010; however, the Disclosure Statement was devoid of any substantive information that would be helpful in assisting creditors in considering the efficacy of the Disclosure Statement or the Plan.  Though relying heavily on the Exhibits to the Disclosure Statement to provide support for the Plan, the Debtors did not file the Exhibits to the until November 23, 2010, less than one week prior to the deadline to file objections to the Disclosure Statement (and one day before the Thanksgiving holiday long weekend).  Essentially, since the Exhibits provide most of the information that the Debtor relies on to prove the feasibility and confirmability of the Plan,[3] such filing is akin to filing the entire Disclosure Statement on November 23, 2010.  Because of this, 4th Walnut objects to the hearing on the Disclosure Statement going forward on December 9, 2010 as currently scheduled.

WHEREFORE, for the reasons set forth herein, 4th Walnut Associates, L.P., respectfully requests that the Motion be denied.

DATED:  November 29, 2010                    KLEHR HARRISON HARVEY
                                             BRANZBURG LLP


                                   By:     /s/ Margaret M. Manning
                                           Francis M. Correll, Jr., Esquire
                                           Domenic E. Pacitti, Esquire
                                           Margaret M. Manning, Esquire
                                           1835 Market Street, Suite 1400
                                           Philadelphia, PA 19103
                                           (215) 569-2700 (Telephone)
                                           (215) 568-6603 (Facsimile)

---

[3] 4th Walnut contends that both the Disclosure Statement and its Exhibits are still wholly deficient in providing any information that can assist in considering feasibility or confirmability of the Plan.

PHIL1 1292145-3

and
919 Market Street, Suite 1000
Wilmington, DE 19801
(302) 426-1189 (Telephone)
(302) 426-9193 (Facsimile)

Attorneys for 4th Walnut Associates, L.P.

PHIL1 1292145-3