## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 11** |
| | : | |
| **400 WALNUT ASSOCIATES, L.P.** | : | **BANKRUPTCY NO. 10-16094(SR)** |
| | : | |
| **Debtor** | : | |
| | : | |
| **400 WALNUT ASSOCIATES, L.P.** | : | **ADVERSARY NO. 10-** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **4th WALNUT ASSOCIATES, L.P.** | : | |
| **35 Field Point Road** | : | |
| **Greenwich, CT 06830** | : | |
| | : | |
| **and** | : | |
| | : | |
| **IVY REALTY LII, LLC** | : | |
| **35 Field Point Road** | : | |
| **Greenwich, CT 06830** | : | |
| | : | |
| **and** | : | |
| | : | |
| **IVY REALTY SERVICES, LLC** | : | |
| **35 Field Point Road** | : | |
| **Greenwich, CT 06830** | : | |
| | : | |
| **Defendants** | : | |

## DEBTOR'S COMPLAINT AND
## OBJECTION TO PROOF OF CLAIM NO. 7 AS AMENDED

Pursuant to 11 U.S.C. §§ 105(a) and 502 and Federal Rules of Bankruptcy Procedure

3007 and 7001, 400 Walnut Associates, L.P. (the "Debtor" and, at times, the "Plaintiff"), by

and through its counsel, Maschmeyer Karalis P.C., hereby brings this Complaint against 4th

Walnut Associates, L.P., Ivy Realty LII, LLC and Ivy Realty Services, LLC, and in support

thereof, respectfully avers as follows:

## Jurisdiction and Venue

1.      This is an adversary proceeding commenced by the Debtor, pursuant to 11 U.S.C. §§ 105(a) and 502 (the "Bankruptcy Code") and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b) and (e) and this matter arises in, under, and is related to a pending bankruptcy case.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E) and (O).

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## The Parties

4.      Plaintiff, Debtor, is a limited partnership with an office located at 1700 Walnut Street, Philadelphia, PA 19103.  The Debtor's principal asset is the real property located at 400-414 Walnut Street, Philadelphia, Pennsylvania 19106 (the "Property").  The Property consists of sixty-seven (67) luxury residential apartment units and one (1) commercial unit.

5.      Defendant, 4th Walnut Associates, L.P. ("4th Walnut") is a Delaware limited partnership with an office located at 35 Field Point Road, Greenwich, CT 06830.  On June 30, 2010, 4th Walnut purchased the loan between the Debtor and Sovereign Bank, as successor by merger, to Independence Community Bank that is secured by the Property.

6.      Defendant, Ivy Realty LII, LLC ("Ivy LII"), is a Delaware limited liability company with an office located at 35 Field Point Road, Greenwich, CT 06830.  Ivy LII is the general partner of 4th Walnut.

7.      Defendant Ivy Realty Services, LLC ("Ivy Services") is a Delaware limited liability company with an office located at 35 Field Point Road, Greenwich, CT 06830.  At

2

times, 4th Walnut, Ivy LII, and Ivy Services are hereinafter referred to as the "Defendants".

## Overview

8.      This adversary proceeding arises from the Defendant 4th Walnut's breach of the Forbearance Agreement (as hereinafter defined) and the Sovereign Loan (as hereinafter defined), the breach of the implied covenant of good faith and fair dealing, negligence, and all Defendants' intentional interference with existing and/or prospective contractual relations and the filing by the Defendant 4th Walnut of an inflated Proof of Claim No. 7, as amended, in the Debtor's bankruptcy case.

9.      The 4th Walnut Defendant is the successor by assignment to Sovereign Bank as a result of their purchase of the Sovereign Loan.  The 4th Walnut Defendant's breaches, together with the other Defendants' breaches, have resulted in substantial harm to the Debtor, including but not limited to, forcing the Debtor to seek protection under the Bankruptcy Code, incurring substantial fees and costs in defending claims asserted by the Defendants, defending actions that interfere with the Debtor's operation of its business and, filing inflated and improper claims in the Debtor's bankruptcy case.

10.     After Sovereign Bank (a) in November 2009 declared a default under the Sovereign Loan, (b) in December 2009 notified tenants at the Property that all future rents were to be paid to Sovereign Bank and (c) in January 2010 filed a foreclosure complaint against the Property, the Debtor and Sovereign Bank on January 29, 2010 reached the Forbearance Agreement.

11.     Despite the Forbearance Agreement, by letter dated July 2, 2010, only two days after 4th Walnut purchased the loan, 4th Walnut notified the Debtor that a prior default existed, the license to collect rents had been previously revoked by Sovereign Bank and that the full

amount of the debt was due and owing event though they did not identify the amount of the alleged debt that was due and owing.

12.     The Debtor by letter dated July 7, 2010, informed 4th Walnut of the Forbearance Agreement struck with Sovereign Bank and that their actions were inconsistent with the agreement reached.  Nevertheless, 4th Walnut moved aggressively to exercise remedies under the Sovereign Loan forcing the Debtor into bankruptcy to protect the Property for the benefit of all the creditors and its estate.

13.     Despite numerous requests to meet and discuss the matter, 4th Walnut refused to meet with the Debtor and continued to take actions that were in bad faith and inconsistent with the prior course of conduct and/or performance with Sovereign Bank and the Forbearance Agreement reached by the parties.

## Background

14.     The Debtor purchased the Property on or about May 12, 2000, which at that time was an office building, and converted the Property to a luxury apartment building consisting of 67 apartments and one commercial space on the ground floor.

15.     The Property is located in a historic district that is listed in the National Register of Historic Places maintained by the United States Department of the Interior pursuant to the National Historic Preservation Act of 1966, 16 U.S.C. §§ 470-470x-6,[1] and the United States National Park Service has certified that the Property is of historic significance to that district.

---

[1] Congress enacted the National Historic Preservation Act in 1966 to "foster conditions under which our modern society and our prehistoric and historic resources can exist in productive harmony." See, 16 U.S.C. § 470-1(1). See also, CTIA - The Wireless Ass'n v. FCC, 466 F.3d 105, 106 (D.C. Cir. 2006).  To that effect, the Act authorizes the Secretary of the Interior to expand and maintain a National Register of "districts, sites, buildings, structures, and objects significant in American history, architecture, archaeology, engineering and culture."  See, 16 U.S.C. § 470a(a)(1)(A).  See also, Dugong v. Rumsfeld, 2005 U.S. Dist. LEXIS 3123, at *13-*14 (N.D. Cal. Mar. 1, 2005).

16.     The cost to convert and renovate the Property into apartments was financed with equity and the proceeds of a construction loan made on or about May 30, 2001 in the principal amount of $12,000,000 by Amalgamated Bank of New York ("Amalgamated Bank") and the sale of certain historic rehabilitation tax credits to Chevron TCI, Inc.

17.     On February 20, 2004, the Debtor refinanced its construction loan with Amalgamated Bank with a balance of approximately $12,041,505 by a new credit facility advanced by Independence Community Bank ("ICB") in the amount of $13,125,000.

18.     The new loan was evidenced by a MultiFamily Note in the principal amount of $13,125,000 dated February 20, 2004 and to secure its obligations to make payments under the MultiFamily Note, the Debtor entered into a Multifamily Mortgage, Assignment of Rents and Security Agreement dated as of February 20, 2004 and Lender's Subordination, Nondisturbance and Attornment Agreement dated February 20, 2004 in connection with a Master Lease Agreement for the Property.

19.     Sometime in 2006, Sovereign Bank ("Sovereign Bank") acquired ICB and became the successor-in-interest to the MultiFamily Note and the related loan documents (collectively, the "Sovereign Loan").

20.     The Debtor made all the monthly installment payments under the Sovereign Loan through and including the month of May 2009.

21.     On or about November 2009, Sovereign Bank declared a default under the Sovereign Loan.

22.     By letters dated December 4, 2009 and December 29, 2009, Sovereign Bank sent notice to all of the tenants residing at the Property to remit their rents directly to Sovereign Bank.

23.     On or about January 29, 2010, Sovereign Bank filed a Complaint in Mortgage Foreclosure styled <u>Sovereign Bank vs. 400 Walnut Associates</u>, Philadelphia County Court of Common Pleas, Case No. 100103364 (the "Foreclosure Complaint").   A copy of the Foreclosure Complaint is attached hereto as Exhibit "A" and made a part hereof.

24.     In paragraph 12 of the Foreclosure Complaint, Sovereign Bank avers that as a consequence of the default under the Sovereign Loan, the Debtor is liable to Sovereign Bank as follows:

|      |                          |               |
|------|--------------------------|---------------|
| i.   | Principal                | $12,011,927.52 |
| ii.  | Interest (as of 1/18/10) | 1,372,029.05  |
| iii. | Late Charges             | 53,251.35     |
| iv.  | Returned Check Charges   | 105.00        |
| v.   | Prepayment Penalty       | 120,119.28    |
| vi.  | Fees                     | <u>14,323.50</u> |
| vii. | Sub-Total                | $13,571,755.70 |

plus continuing default interest at the Note rate ($5,338.63 per diem as of 1/1/8/10), and costs and fees until paid.  Edward Meditz, Vice-President of Sovereign Bank signed the verification to the Foreclosure Complaint.

25.     On January 29, 2010, representatives of the Debtor, John J. Turchi, Jr. ("Mr. Turchi") and Debtor's counsel, Aris J. Karalis, met at the offices of counsel for Sovereign Bank, Bonnie Golub, who participated in person and participating by phone was Ed Meditz, Vice-President of Sovereign Bank and Robert M. Craig, Senior Vice-President, National Commercial Real Estate, Sovereign Bank.  The meeting resulted in an oral agreement (the "Forbearance Agreement").   Sovereign Bank's counsel was to reduce the Forbearance Agreement to writing.

26.     Under the Forbearance Agreement, the Debtor was to continue to collect the rents from the Property each month, pay the expenses associated with the Property and remit to Sovereign Bank the net funds after payment of the expenses for the Property.  Further, interest

was to be charged at the contract rate and not at the default rate and both the late charges and the prepayment penalty were to be waived. The term of the Forbearance Agreement was to continue until the maturity date of the loan, which was March 1, 2011 and the Foreclosure Complaint was to be withdrawn.

27.    In accordance with the Forbearance Agreement, later in the day on January 29, 2010, Sovereign Bank's counsel and a representative of the Debtor jointly signed letters that were hand delivered to all of the tenants residing at the Property directing the tenants to remit their rents to 400 Walnut Greentree Associates, L.P.[2] pursuant to the terms of their respective leases. The joint letters signed by Sovereign Bank's counsel and a representative of the Debtor are attached hereto as Exhibit "B" and made a part hereof.

28.    Also, in accordance with the Forbearance Agreement, Sovereign Bank took no further action with the Foreclosure Complaint. A review of the Court of Common Pleas docket for the foreclosure action reveals that Sovereign Bank took no further action in connection with the Foreclosure Complaint after it reached the Forbearance Agreement. A copy of the Common Pleas docket for the Foreclosure Complaint is attached hereto as Exhibit "C" and made a part hereof.

29.    Effective January 29, 2010, the Debtor began operating in reliance on the Forbearance Agreement. The Debtor provided on a monthly basis the net funds remaining after payment of the expenses for the Property to Sovereign Bank. Correspondence and attachments dated March 9, 2010, April 9, 2010 and May 11, 2010, evidencing the payment of the net funds to Sovereign Bank, are attached hereto as Exhibits "D," "E" and "F,"

---

[2] Prior to the Petition Date, the Debtor was the landlord and 400 Walnut Greentee Associates, L.P. was a sub-tenant at the Property pursuant to a master lease agreement dated May 29, 2002, as amended.

respectively, and made a part hereof.[3]

30.    At different times, during the month of February, Sovereign Bank advised the Debtor that Sovereign Bank was extremely busy with other workout transactions and would turn to preparing the written version of the Forbearance Agreement soon.

31.    On or about March 10, 2010, Sovereign Bank advised that it was going to prepare and circulate a draft of the Forbearance Agreement by March 15.

32.    By the end of March 2010, Sovereign Bank advised the Debtor that they needed more time and they would circulate the Forbearance Agreement in the near future.

33.    Thereafter, Sovereign Bank advised that they were reviewing a draft of the Forbearance Agreement and would circulate this draft soon.

34.    Sometime, in April 2010, Sovereign Bank advised that a new workout officer, Matthew Maiorino ("Mr. Maiorino") was replacing Edward Meditz as the workout officer for the Sovereign Loan and that he wanted to inspect the Property.

35.    Initially, a meeting to inspect the Property was scheduled for April 30, 2010 with Mr. Maiorino, his counsel, Mr. Turchi and his counsel.  However the meeting was cancelled a few days prior to the scheduled date.

36.    Consequently, on or about May 4, 2010, Mr. Maiorino again requested to inspect the Property, but this time only wanted to inspect the Property with Mr. Turchi and did not want to meet with counsel.  Mr. Turchi did meet Mr. Maiorino and walked him through the Property.

37.    On or about May 18, 2010, Ivy Realty submitted a letter of intent to Mr. Brian Fiumara at the Flynn Company, which was an offer to purchase the Sovereign Loan

---

[3] The correspondence reflects that the payments "…are being provided in accordance with the agreement that we reached, in principal, during the meeting held at your offices on January 29, 2010.  <u>See</u>, Exhibit "B".

collateralized by the Property for the amount of $9,550,000 (the "Letter of Intent"). A copy of the Letter of Intent is attached hereto as Exhibit "G" and made a part hereof.

38.     The Letter of Intent identifies the purchaser of the Sovereign Loan as a joint venture between affiliates of Ivy Realty and ABCO Properties. See, Exhibit "G", at p. 1.    In addition, the Letter of Intent specifies that purchaser agrees to keep confidential all terms of the Letter of Intent. Id., at p. 2.

39.     Upon information and belief, the Letter of Intent was accepted on May 24, 2010 by a workout officer at Sovereign Bank believed to be Mr. Maiorino. Id., at p. 3.

40.     Against this backdrop, during the month of June 2010, Mr. Turchi heard rumors that Sovereign Bank was offering the Sovereign Loan for sale.

41.     In response, on June 16, 2010 Mr. Turchi called Mr. Maiorino and asked if the Sovereign Loan was being sold. Mr. Maiorino advised Mr. Turchi that Sovereign Bank was considering other options. Mr. Turchi reminded Mr. Maiorino about the Forbearance Agreement with Sovereign Bank and asked to speak with Mr. Craig, but Mr. Craig refused to speak with Mr. Turchi.

42.     Thereafter, Mr. Turchi received a letter dated June 17, 2010 (the "June 17th Letter") from Mr. Maiorino wherein he was informed that Sovereign Bank has opted not to pursue further discussions with the Debtor concerning a forbearance of Sovereign Bank's remedies under the Sovereign Loan and confirmed, inter alia, that Sovereign Bank is amenable to receiving a proposal for a full refinance of the Sovereign Loan. A copy of the June 17th Letter is attached hereto as Exhibit "H" and made a part hereof.

43.     Sovereign Bank's statement that it was opting to pursue other options is a clear and blatant breach of the Forbearance Agreement reached by the parties on January 29, 2010.

44.     Each month the Debtor would receive a monthly loan statement from Sovereign

9

Bank in connection with the Sovereign Loan. The last monthly loan statement received from Sovereign Bank was for the month of June 2010 (the "June 2010 Loan Statement"). A copy of the June 2010 Loan Statement is attached hereto as Exhibit "I" and made a part hereof.

45.     According to the June 2010 Loan Statement, the principal balance due under the Sovereign Loan was $11,984,927.52. The June 2010 Loan Statement also detailed the past due interest at the contract rate, the past due interest at the default rate and certain other charges.

46.     Sovereign Bank and 4th Walnut entered into a Purchase and Assumption Agreement effective as of June 18, 2010, whereby Sovereign Bank, <u>inter alia</u>, represented to 4th Walnut that, as of the date of this agreement, at the time of the Closing, and at the Closing Documents Delivery Date, the outstanding balance of the Sovereign Loan being conveyed by Sovereign Bank as of June 18, 2010 is as follows:

| | |
|---|---|
| " . . .    Principal | $11,884,309.16 |
| Interest (at 5% for 407 days) | $    629,784.87 |
| Default Interest | $1,381,818.02 |
| Late Charges: | $    76,011.15 |
| Appraisal Fee | $    4,500.00 |
| Prepay premium | $  119,849.28 |
| Misc. Fees | $        105.00 |
| Inspection Fee | $        350.00 |
| Attorney's Fees (thru 6/16/10) | $    34,793.35 |
| TOTAL: | $14,131,520.64 . . ." |

<u>See</u>, Exhibit "J", at ¶ 9(l). A copy of the Purchase and Assumption Agreement is attached hereto as Exhibit "J" and made a part hereof.

47.     By letter dated June 30, 2010 from Mr. Craig to Mr. Turchi (the "June 30[th] Letter"), Mr. Craig advised Mr. Turchi that Sovereign Bank had sold the Sovereign Loan to 4th Walnut. A copy of the June 30th Letter is attached hereto as Exhibit "K" and made a part hereof.

48.     By letters dated July 2, 2010 from counsel for 4th Walnut addressed to 400

Walnut Greentree Associates, L.P. and 400 Walnut Associates (the "July 2nd Letters"), 4th Walnut, inter alia, advised the Debtor that by assignment from Sovereign Bank it was the new owner of the Sovereign Loan, that the Debtor was previously notified of its default of its obligations to Sovereign Bank, the loan documents provide the Debtor no opportunity to cure these payment defaults, all obligations under the Sovereign Loan have been accelerated and are immediately due, and the Debtor's license to collect rents from the Property had been revoked and terminated by Sovereign Bank.  A copy of the July 2nd Letters are attached hereto as Exhibit "L" and made a part hereof.

49.    Even though the July 2nd Letters indicated that the obligations under the Sovereign Loan were due and owing, there was no identification as to the amount of the obligations that were allegedly due.

50.    By letter dated July 7, 2010, from counsel for the Debtor to counsel for 4th Walnut (the "July 7th Letter"), the Debtor advised 4th Walnut of the Forbearance Agreement and that the default previously declared by Sovereign Bank, including the Foreclosure Complaint, had been resolved.  The July 7th Letter also offered to meet to discuss this matter. A copy of the July 7th Letter is attached hereto as Exhibit "M" and made a part hereof.

51.    Nevertheless, the Defendants declined to meet with the Debtor and 4th Walnut continued to pursue remedies under the Sovereign Loan, which forced the Debtor to file its voluntary Chapter 11 petition before this Court to protect the Property for the benefit of all the creditors and its estate.

52.    By letter dated July 22, 2010, counsel for 4th Walnut advised 400 Walnut Greentree Associates, L.P. that the Master Lease Agreement between the Debtor and 400 Walnut Greentree Associates, L.P. is hereby terminated.

53.    On July 23, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for

reorganization under Chapter 11 of the Bankruptcy Code.

54.    Thereafter, the Debtor was copied on a form letter dated July 23, 2010 prepared by 4th Walnut and addressed to "Current Tenant(s)" at the Property, which was sent by first class mail to the tenants at the Property but not received by any tenant at the Property until after the Petition Date.

55.    Since the Petition Date, the Debtor has continued to operate its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

56.    By Bankruptcy Court Order dated September 1, 2010, the Bankruptcy Court fixed October 15, 2010 as the general bar date and January 19, 2011 as the governmental bar date for the filing of proofs of claim.

57.    On October 15, 2010, 4th Walnut filed a proof of claim asserting a secured claim in the amount of $15,267,261 (plus attorneys' fees and costs) at Claim Docket No. 7-1.  This claim had attached one page that, _inter_ _alia_, provided the following itemized statement of the debt:

### ITEMIZED STATEMENT OF DEBT

| | |
|---|---|
| Principal (See attached documents): | $13,200,754.35 |
| Interest (as of 7/20/10): | $1,344,050.75 |
| Late Charges: | $714,394.71 |
| Prepayment Premium: | $8,061.20 |
| | |
| TOTAL: | $15,267,261.00 |

The amounts due pursuant to the Sovereign Loan continue to accrue additional interest, late charges and attorneys' fees, costs and expenses.

No supporting documentation was attached to this proof of claim.

58.    On October 20, 2010, 4th Walnut filed an amended proof of claim asserting a secured claim in the amount of $30,534,522 (plus attorneys' fees and costs) at Claim Docket

No. 7-2.[4]

59.     On the same date, October 20, 2010, 4th Walnut filed a further amended proof of

claim asserting a secured claim in the amount of $15,267,261 (plus attorneys' fees and costs) at

Claim Docket No. 7-3 (the "4th Walnut Claim").  This claim also had attached a page that, <u>inter

alia</u>, provided the following itemized statement of the debt:

### ITEMIZED STATEMENT OF DEBT

| | |
|---|---|
| Principal (See attached documents): | $13,200,754.35 |
| Interest (as of 7/20/10): | $1,344,050.75 |
| Late Charges: | $714,394.71 |
| Prepayment Premium: | $8,061.20 |

| | |
|---|---|
| TOTAL: | $15,267,261.00 |

The amounts due pursuant to the Sovereign Loan continue to accrue additional
interest, late charges and attorneys' fees, costs and expenses.

A copy of the 4th Walnut Claim with exhibits is attached hereto as Exhibit "N" and made a part

hereof.

60.     Despite the fact that Sovereign Bank reflected a principal balance due as of June

30, 2010 under the Sovereign Loan of only $11,984,927.52, 4th Walnut is asserting that the

principal balance due under the Sovereign Loan is $13,200,754.35 as of the Petition Date, an

increase of $1,215,826.83 within a 23 day period between June 30, 2010 and the Petition Date.

61.     Despite the fact that Sovereign Bank reflected late charges due as of June 30,

2010 under the Sovereign Loan of only $72,217.85, 4th Walnut is asserting that the late charges

due under the Sovereign Loan of $714,394.71 as of the Petition Date, an increase of

$642,176.86 within a 23 day period between June 30, 2010 and the Petition Date.

---

[4] The actual dollar amount on the physical proof of claim is $15,267,261.  However, it appears to have been filed
incorrectly asserting a claim in the amount of $30,534,522.

62.     The Debtor's books and records reflect that the obligations as of the Petition

Date under the Sovereign Loan are in the amount of $12,678,462.67 as follows:

|                |                |
|----------------|----------------|
| Principal      | $11,984,927.52 |
| Interest       | $    617,827.07 |
| Tax Escrow     | $     75,708.08 |
| TOTAL:         | $12,678,462.67 |

63.     The payment history for the Sovereign Loan dated September 17, 2010 obtained

from Sovereign Bank reflects a principal balance due of  $11,984,927.52 as of June 30, 2010

and late charges in the amount of $76,011.25 being waived.  A copy of the loan payment

history for the Sovereign Loan is attached hereto as Exhibit "O" and made a part hereof.

### COUNT I

### THE DEBTOR v. DEFENDANT 4TH WALNUT
### BREACH OF CONTRACT

64.     The averments set forth in paragraphs 1 through 63 above are

incorporated herein, as if fully set forth at length.

65.     The Forbearance Agreement was a valid, enforceable contract between

the Debtor and Sovereign Bank.

66.     The Forbearance Agreement remains a valid, enforceable contract

between the Debtor and Defendant 4th Walnut, as a successor-in-interest to Sovereign

Bank.

67.     The Debtor performed its obligations under the Forbearance Agreement

by, among other things:  (i) collecting the rents on the Property each month,  (ii) paying

the expenses associated with the Property, and  (iii) remitting to Sovereign Bank the net

funds after payment of the expenses for the Property.

68.     Defendant 4th Walnut, as a successor-in-interest to Sovereign Bank,

materially breached its obligations under the Forbearance Agreement by, among other things  (i) declaring a default under the Sovereign Loan,  (ii) accelerating the amounts allegedly owed under the Sovereign Loan,  (iii) asserting that the default rate of interest is owed under the Sovereign Loan,  (iv) asserting that a prepayment penalty and late charges are owed under the Sovereign Loan, (v) asserting that the Debtor's license to collect any rents from the Property had been revoked and terminated, and  (vi) asserting the Sovereign Loan is due prior to its maturity date of March 1, 2011.

69.    Defendant 4th Walnut, as a successor-in-interest to Sovereign Bank, materially breached its obligations under the Forbearance Agreement by intentionally, with the intent to harm the Debtor and inflate its claim against the Debtor, recharacterizing the amounts paid to Sovereign Bank by the Debtor (*while Sovereign owned the Sovereign Loan*) and retroactively readjusting the application of such amounts paid in direct contravention from the manner in which Sovereign applied the payments received from the Debtor.

70.    In so breaching, Defendant 4th Walnut, as a successor-in-interest to Sovereign Bank, not only has arbitrarily and unreasonably engaged in conduct which has deprived the Debtor of the fruits of its contract, but has caused substantial monetary damages to the Debtor.

**WHEREFORE,** the Debtor respectfully demands judgment in its favor and against Defendant 4th Walnut, together with its attorneys' fees and costs and for such other and further relief as this Honorable Court deems just and appropriate.

## COUNT II

### THE DEBTOR v. DEFENDANT 4TH WALNUT
### BREACH OF ORAL CONTRACT

71.    The averments set forth in paragraphs 1 through 70 above are incorporated herein, as if fully set forth at length.

72.    The Debtor and Sovereign Bank entered into a valid, enforceable oral contract (*i.e., the Forbearance Agreement*) on January 29, 2010.

73.    The Forbearance Agreement remains a valid, enforceable oral contract between the Debtor and Defendant 4th Walnut, as a successor-in-interest to Sovereign Bank.

74.    The Debtor performed its obligations under the Forbearance Agreement by, among other things:  (i) collecting the rents on the Property each month,  (ii) paying the expenses associated with the Property, and  (iii) remitting to Sovereign Bank the net funds after payment of the expenses for the Property.

75.    Defendant 4th Walnut, as a successor-in-interest to Sovereign Bank, materially breached its obligations under the Forbearance Agreement by, among other things  (i) declaring a default under the Sovereign Loan,  (ii) accelerating the amounts allegedly owed under the Sovereign Loan,  (iii) asserting that the default rate of interest is owed under the Sovereign Loan,  (iv) asserting that a prepayment penalty and late charges are owed under the Sovereign Loan, (v) asserting that the Debtor's license to collect any rents from the Property had been revoked and terminated, and  (vi) asserting the Sovereign Loan is due prior to its maturity date of March 1, 2011.

76.    Defendant 4th Walnut, as a successor-in-interest to Sovereign Bank, materially breached its obligations under the Forbearance Agreement by intentionally,

with the intent to harm the Debtor and inflate its claim against the Debtor, recharacterizing the amounts paid to Sovereign Bank by the Debtor (*while Sovereign owned the Sovereign Loan*) and retroactively readjusting the application of such amounts paid in direct contravention from the manner in which Sovereign applied the payments received from the Debtor.

77.    In so breaching, Defendant 4th Walnut, as a successor-in-interest to Sovereign, not only has arbitrarily and unreasonably engaged in conduct which has deprived the Debtor of the fruits of its oral contract, but has caused substantial monetary damages to the Debtor.

**WHEREFORE,** the Debtor respectfully demands judgment in its favor and against Defendant 4th Walnut, together with its attorneys' fees and costs and for such other and further relief as this Honorable Court deems just and appropriate.

## COUNT III

### THE DEBTOR v. DEFENDANT 4TH WALNUT
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

78.    The averments set forth in paragraphs 1 through 77 above are incorporated herein, as if fully set forth at length.

79.    The Forbearance Agreement was a valid, enforceable contract between the Debtor and Sovereign Bank.

80.    The Forbearance Agreement remains a valid, enforceable contract between the Debtor and Defendant 4th Walnut, as a successor-in-interest to Sovereign Bank.

81.    There is implied in every contract a duty of good faith and fair dealing that neither party will do anything to deprive the other of the fruits of the contract.

82.     This being so, the Forbearance Agreement at bar contained said implied duty of good faith and fair dealing, as a matter of law.

83.     By failing to act in accordance with the terms of the Forbearance Agreement, Defendant 4th Walnut, as a successor-in-interest to Sovereign Bank, has not only deprived the Debtor of the fruits of the contract, but has caused substantial monetary damages to the Debtor. Said actions constitute breaches of the implied covenant of good faith and fair dealing.

84.     Defendant 4th Walnut's breaches of the implied covenant of good faith and fair dealing entitle the Debtor to damages caused by Defendant 4th Walnut's breaches, as well as punitive damages.

**WHEREFORE**, the Debtor respectfully demands judgment in its favor and against Defendant 4th Walnut, together with its attorneys' fees and costs and for such other and further relief as this Honorable Court deems just and appropriate.

## COUNT IV

### THE DEBTOR v. DEFENDANT 4TH WALNUT
### NEGLIGENCE

85.     The averments set forth in paragraphs 1 through 84 above are incorporated herein, as if fully set forth at length.

86.     Defendant 4th Walnut was negligent in the handling of the Sovereign Loan. Specifically, Defendant 4th Walnut was negligent in its recharacterization of the amounts paid to Sovereign Bank by the Debtor (*at a time where they had no rights whatsoever in the Sovereign Loan*).

87.     In addition, Defendant 4th Walnut was equally negligent in its retroactive reconfiguration of the amounts allegedly owed by the Debtor in direct contravention of the amounts initially configured by Sovereign Bank at the time it owned the Sovereign

Loan.

88.    As a result, Defendant 4th Walnut breached its duty to the Debtor.

89.    In short, the Debtor has suffered substantial damages as a result of the negligence of Defendant 4th Walnut.

**WHEREFORE,** the Debtor respectfully demands judgment in its favor and against Defendant 4th Walnut, together with its attorneys' fees and costs and for such other and further relief as this Honorable Court deems just and appropriate.

## COUNT V

### THE DEBTOR v. DEFENDANT 4TH WALNUT
### DECLARATORY JUDGMENT

90.    The averments set forth in paragraphs 1 through 89 above are incorporated herein, as if fully set forth at length.

91.    The actions incurred by Defendant 4th Walnut, as a successor-in-interest to Sovereign Bank, constitute a material breach of its agreements, promises, and/or commitments, and a breach of its implied covenant of good faith and fair dealing.

92.    As a result of Defendant 4th Walnut's breach of contract, breach of fair dealing, and negligence, the Debtor is not liable to Defendant 4th Walnut for any amount of money allegedly due to Defendant 4th Walnut.

**WHEREFORE**, Debtor respectfully seeks a declaration that it is not liable to Defendant 4th Walnut for any amount of money allegedly due to Defendant 4th Walnut and for such other and further relief as this Honorable Court deems just and appropriate.

## COUNT VI

### THE DEBTOR v. ALL DEFENDANTS
### INTENTIONAL INTERFERENCE WITH EXISTING
### CONTRACTUAL RELATIONS

93.    The averments set forth in paragraphs 1 through 92 above are incorporated herein, as if fully set forth at length.

94.    The Forbearance Agreement was a valid, enforceable contract between the Debtor and Sovereign Bank.

95.    The Defendants had knowledge of this contractual relationship between the Debtor and Sovereign Bank and of the existence of the Forbearance Agreement.

96.    During the months of May and June 2010, the Defendants purposely interfered with the specific intent of destroying the terms of the Forbearance Agreement for their own benefit[4] and harming the business relationship between the Debtor and Sovereign Bank.

**97.**    Specifically, the Defendants intentionally and improperly interfered with the Debtor's performance of the Forbearance Agreement with Sovereign Bank by inducing or otherwise causing Sovereign Bank to not perform and materially breach their obligations under the Forbearance Agreement by, among other things:

(i)    Directing Sovereign Bank to instruct the Debtor that the Sovereign Loan was in default;

(ii)    Directing Sovereign Bank to instruct the Debtor that it never agreed to a forbearance with the Debtor; and

(iii)    Directing Sovereign Bank to send the Pa. R. C. P. 237.1 notice to the Debtor in connection with the Foreclosure Complaint.

**98.**    The Defendants have no privilege or justification for their actions in

---

[4] The Defendants obviously benefit if there is no Forbearance Agreement to bind them as successors-in-interest to Sovereign Bank.

intentionally interfering with the Forbearance Agreement reached between the Debtor and Sovereign Bank.

99.     As a result of the Defendants' intentional and improper interference with Sovereign Bank's performance of the Forbearance Agreement, the Debtor has suffered substantial losses as a result of Sovereign Bank's failure to perform its obligations under the Forbearance Agreement.

100.    This being so, the Debtor has suffered substantial damages for the intentional interference identified above.  These substantial damages consist of the pecuniary loss of the benefits of the Forbearance Agreement at bar, the consequential losses for which the interference is a legal cause; and the emotional distress or harm to reputation produced by such intentional interference.   In short, the Debtor is entitled to the actual damages suffered, together with punitive damages.

**WHEREFORE**, the Debtor respectfully demand judgment in its favor and against the Defendants, together with its' attorneys' fees and costs and for such other and further relief as this Honorable Court deems just and appropriate.

<u>**COUNT VII**</u>

**THE DEBTOR v. ALL DEFENDANTS**
<u>**INTENTIONAL INTERFERENCE WITH PROSPECTIVE**</u>
<u>**CONTRACTUAL RELATIONS**</u>

101.  The averments set forth in paragraphs 1 through 100 above are incorporated herein, as if fully set forth at length.

102.  In the event the Forbearance Agreement is determined not to be a valid, enforceable contract between the Debtor and Sovereign Bank, a prospective contractual relationship existed between the Debtor and Sovereign Bank.

103.  The  Defendants  had  knowledge  of  this  prospective  contractual

21

relationship between the Debtor and Sovereign Bank.

104.    During the months of May and June 2010, the Defendants purposely interfered with the specific intent of destroying the prospective contractual relationship between the Debtor and Sovereign Bank for their own benefit[5] and harming the business relationship between the Debtor and Sovereign Bank.

105.    Specifically, in the event the Forbearance Agreement is determined not to be a valid contract between the Debtor and Sovereign Bank, the Defendants intentionally and improperly interfered with the Debtor's performance of a prospective contractual relationship with Sovereign Bank by inducing or otherwise causing Sovereign Bank to negate the existence of a valid contractual relationship by, among other things:

    (i)    Directing Sovereign Bank to instruct the Debtor that the Sovereign Loan was in default;

    (ii)    Directing Sovereign Bank to instruct the Debtor that it never agreed to a forbearance with the Debtor; and

    (iii)    Directing Sovereign Bank to send the Pa. R. C. P. 237.1 notice to the Debtor in connection with the Foreclosure Complaint.

106.    The Defendants have no privilege or justification for their actions in intentionally interfering with the prospective contractual relationship between the Debtor and Sovereign Bank.

107.    As a result of the Defendants' intentional and improper interference with Sovereign Bank's performance of the prospective contractual relationship, the Debtor has suffered losses as a result of Sovereign Bank's failure to perform.

108.    This being so, the Debtor has suffered substantial damages for the intentional

---

[5] The Defendants obviously benefit if there is no prospective contractual relationship between the Debtor and Sovereign Bank to bind them as successors-in-interest to Sovereign Bank.

interference identified above.  These substantial damages consist of the pecuniary loss of the benefits of the prospective relation between the Debtor and Sovereign Bank, the consequential losses for which the interference is a legal cause; and the emotional distress or harm to reputation produced by such intentional interference.  In short, the Debtor is entitled to the actual damages suffered, together with punitive damages.

**WHEREFORE**, the Debtor respectfully demand judgment in its favor and against the Defendants, together with its' attorneys' fees and costs and for such other and further relief as this Honorable Court deems just and appropriate.

## COUNT VIII

### THE DEBTOR v. DEFENDANT 4TH WALNUT
### OBJECTION TO PROOF OF CLAIM NO. 7-3 FILED BY 4TH WALNUT

109.    The averments set forth in paragraphs 1 through 106 above are incorporated herein, as if fully set forth at length.

110.    The 4th Walnut Claim is disputed, contingent and unliquidated.

111.    The payment history for the Sovereign Loan dated September 17, 2010 obtained from Sovereign Bank reflects a principal balance due of only $11,984,927.52 as of June 30, 2010 and the late charges in the amount of $76,011.15 being waived.

112.    The Debtor's books and records reflect that Defendant 4th Walnut holds a secured claim, as of the Petition Date, in the amount of $12,678,462.67 as follows:

| | |
|---|---|
| Principal | $11,984,927.52 |
| Interest | $    617,827.07 |
| Tax Escrow | $     75,708.08 |
| TOTAL: | $12,678,462.67 |

113.    As such, the amount of the 4th Walnut Claim should be reduced to no more than $12,678,462.67 as of the Petition Date.

**WHEREFORE,** the Debtor respectfully prays that an Order be entered as follows:

a.     sustaining the Objection;

b.     Defendant 4th Walnut shall have an allowed secured claim as of the Petition Date in the amount of $12,678,462.67, comprised of $11,984,927.52 of principal, $617,827.07 of accrued interest and $75,708.08 of accrued tax escrow payments;

c.      the foregoing amount shall be reduced by the amount of the judgment entered in favor of the Debtor and against Defendant 4th Walnut under this Complaint; and

d.      for such other and further relief as this Honorable Court deems just and appropriate.

**Respectfully submitted,**

**MASCHMEYER KARALIS P.C.**

By*:      /s/ Aris J. Karalis*
         ARIS J. KARALIS
         ROBERT W. SEITZER
         FRANK MARINAS
         1900 Spruce Street
         Philadelphia, PA 19103
         (215) 546-4500
         Attorneys for the Debtor

Dated: December 8, 2010