**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | : CHAPTER 11 |
| | : |
| 400 WALNUT ASSOCIATES LP | : |
| | : |
| DEBTOR(S) | : BANKRUPTCY NO.10-16094 SR |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Before the Court is the Debtor's Motion for Use of Cash Collateral and 4th Walnut Street, L.P.'s corresponding Motion for Relief from the Automatic Stay. Each motion is opposed. A hearing on the matter was held on December 9, 2010. At the hearing, the parties agreed that a ruling on a preliminary issue was in order before the competing Motions proceeded further. Briefs were submitted on that issue and the Court took the matter under advisement. For the reasons set forth below, the Court holds that the rents generated by the Debtor's real estate constitute cash collateral.[1]

*Issue in Context*

The question before the Court is who owns the rents which derive from the Debtor's real estate? The answer to that question is semi-dispositive: If the rents are found to be property of 4th Walnut, then they are not property of the estate and may not be used as cash collateral by the Debtor. That would moot the Debtor's motion for use of cash collateral. Conversely, should the Court find that the rents *are* property of the

---

[1] Because this matter involves the use of cash collateral it is within this court's "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(M).

estate, then they may be used as cash collateral so long as 4th Walnut's interest was adequately protected.

*Factual Background*

Debtor has owned the real property at 4th and Walnut Streets in Philadelphia since May 2000. Transcript of Hearing, 12/9/10 (T-) 22-23. The Debtor converted this former office building to residential apartments. *Id.* In 2001, it obtained construction loan financing for the project through Amalgamated Bank. T-24. In May 2002, the Debtor entered into a Master Lease Agreement with 400 Walnut Greentree Associates, LP ("Greentree"). Debtor's Brief, 4. In February 2004, the Debtor had obtained permanent financing for the project through Independence Community Bank (IBC). *Id.*, 24; Debtor's Exhibits (D-)[2] 1. IBC took a mortgage on the real estate which contains an assignment of rents. D-2. In 2006, Sovereign acquired the Debtor's loan. T-26. In December 2009, Sovereign notified the Debtor that it had defaulted under the loan. L-7 It also exercised its rights to the rents by informing tenants of the same. *See* L-10, 6/17/10 Letter from Sovereign to J. Turchi, second paragraph. In January 2010, Sovereign, commenced foreclosure proceedings. On June 18, 2010, Sovereign sold its interest in the note to 4th Walnut Street LP (4th Walnut). L-21. On July 2, 4th Walnut informed the Debtor that it had purchased the loan from Sovereign, declared Debtor in default, and demanded the rents. L-11, L-12. On July 22, it made a second demand upon the Debtor for the rents. L-13. On July 23, the Debtor commenced this Chapter 11 case. This much is undisputed.

---

[2] For purposes of efficiency, the Court will cite the parties exhibits with the following abbreviations: "D-" for the Debtor and "L-" for the lender, 4th Walnut.

*The Arguments*

Debtor offers three arguments in support of its claim to *all* of the rents: first, that the written Assignment of Rents is ambiguous on the question of whether it assigned the rents or merely granted a security interest in them; second, that 4th Walnut is bound by a forbearance agreement which Debtor reached with the previous holder of the loan; and third, that 4th Walnut is likewise limited by the previous holder's failure to enforce its security interest in the rents. To these three, Debtor adds a fourth argument for partial relief: that any ruling in 4th Walnut's favor would not include any rents from leases entered into *post*petition.

4th Walnut takes up two of the Debtor's arguments in contending that the rents belong to it. First, it argues that as of the petition date Debtor had divested itself of any interest in the rents. Second, it maintains that it is not subject to any preexisting forbearance agreement and for either of two reasons: either the agreement was not put in writing or the record does not indicate that any agreement was ever reached.

*Rents and Property*
*of the Estate*

4th Walnut's premise that Debtor has no interest in the rents implicates a fundamental bankruptcy principle: that the range of property interests which are included in a bankruptcy estate is extensive. *See* 11 U.S.C. § 541(a)(1) (providing that the is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."); *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-205, 103 S.Ct. 2309, 2313 (1983)(observing that legislative history indicates that scope of § 541 is broad). Moreover, subsection (a) of § 541 is defined as well to

include specific items of property such as rents. *See* 11 U.S.C. § 541(a)(6) (including rents among property of the estate). The burden of proof as to what is property of the estate generally rests with the creditor. *In re Datesman*, 1999 WL 608856 at *2 (Bankr.E.D.Pa. August 9, 1999)[3]

*Assignments of Rents*
*Under Pennsylvania Law*

Notwithstanding the general principle, 4th Walnut contends that the rents are not property of this estate. It explains that, under the terms of the Mortgage, the Debtor assigned its interest in the rents to the lender. That provision, 4th Walnut continues, vests title to the rents in 4th Walnut and limits Debtor's interest in them to a license.[4] That license was revoked, it concludes, after Debtor defaulted on the loan. What, exactly, is the Debtor's interest in these rents?

*Applicable Non-Bankruptcy Law*

The law of the state in which the property is located determines whether the debtor has an interest in property. *Butner v. United States*, 440 U.S. 48, 54-55 (1979); *see also In re O'Dowd*, 233 F.3d 197, 202 (3d Cir.2000) ("While federal law defines what types of property comprise the estate, state law generally determines what interest, if any, a debtor has in property.") The parties agree here that Pennsylvania controls on the question of ownership of the rents. With regard to the relationship between a mortgage loan borrower and the creditor, Pennsylvania is known as a "title"

---

[3] However, it should be noted that the parties rely on the same evidence to make their arguments thereby making the evidentiary allocation essentially irrelevant.

[4] That is, to collect the rents, pay certain specified expenses, and then remit the remainder to the lender.

theory state. This means that the mortgage conveys the property to the creditor in fee simple. *See Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34, 38 (3d Cir. 1993)  In the event of default, the mortgagee may enter into possession of the land, collect the rents, and retain possession until the debt is satisfied. *Id. citing Bulger v. Wilderman*, 101 Pa.Super. 168, 1930 WL 3790 at *3 (Pa.Super.1930)  Where the mortgage contains a specific assignment of rents, the mortgagee may demand and receive rents from all tenants, regardless of when they entered into their leases. *Id. citing Fogarty v. Shamokin & Mt. Carmel Transit Co.*, 367 Pa. 447, 450, 80 A.2d 727, 728-729 (1951).  What does this mortgage provide as to the rents generated by the Debtor's real estate?  Are the rents conveyed outright? Or, are they pledged as security?

*The Mortgage and the
Assignment of  Rents*

According to the Debtor, that depends on which part of the assignment one is reading: its terms are so self-contradictory, Debtor maintains, that it could be fairly construed as either an absolute conveyance or a pledge of security.  The upshot of all this is that the Debtor sees the relevant provision as ambiguous and the Debtor is, therefore, entitled to the benefit of the doubt. *See* Debtor's Brief, 1-2.  For its part, 4th Walnut reads the  Assignment to be unmistakably clear: the assignment conveys the rents to 4th Walnut while granting Debtor a license to collect the rents so long as it is not otherwise in default. *See* 4th Walnut Brief, 2.

The Court begins with the Debtor's ambiguity claim.  Testing that claim necessarily requires an analysis of the controlling document: the Assignment of Rents

5

is contained within the Multifamily Mortgage, Assignment of Rents and Security Agreement (Mortgage).  *See* D-2.  Under the Mortgage, "the Borrower mortgages, warrants, grants, conveys and assigns to Lender the Mortgaged Property..." *Id*., p.1, third introductory paragraph.  A defined term, "Mortgaged Property" includes "all Rents and Leases…" *Id*., ¶ 1 Definitions, (s)(10).[5]  One arrives at the assignment of rents in § 3.  Because of this section's importance to this analysis, this lengthy excerpt follows:

> 3. ASSIGNMENT OF RENTS: APPOINTMENT OF RECEIVER; LENDER IN POSSESSION
>
> (a) As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Rents.  It is the intention of Borrower to establish a *present, absolute and irrevocable transfer and assignment to Lender of all Rents* and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower.  Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require.  Borrower and Lender intend this assignment of Rents to immediately effective and *to constitute an absolute present assignment and not an assignment for additional security only.*  For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, *Rents shall not be deemed to be a part of the "Mortgaged Property*," as that term is defined in Section 1(s).  However, *if* this present, absolute and unconditional assignment of Rents is *not enforceable* by its terms under the laws of the Property Jurisdiction, *then the Rents shall be included as a part of the Mortgaged Property* and it is the *intention* of the borrower that in this circumstance this Instrument *create and perfect a lien on Rents* in favor of Lender, which lien shall be effective as of the date of this Instrument.
>
> (b) After the occurrence of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgage Property to pay all

---

[5] "Rents" are further defined at ¶(1)(x); however, that term itself is not at issue.

> rents to, or as directed by, Lender, and Borrower shall, upon
> Borrower's receipt of any Rents from any sources (including,
> but not limited to subsidy payments under any Housing
> Assistance Payments Contract), pay the total amount of
> such receipts to the Lender.  However, until occurrence of
> an Event of Default, Lender hereby grants to Borrower a
> revocable license to collect and receive all Rents, to hold all
> Rents in trust for the benefit of Lender and to apply all Rents
> to pay the installments of interest and principal then due and
>  payable under the Note and the other amounts then due
> and payable under the other Loan Documents, including
> imposition Deposits, and to pay the current costs and
> expenses of managing, operating and maintaining the
> Mortgage Property, including utilities, Taxes and insurance
> premiums (to the extent not included in Imposition Deposits),
> tenant improvements and other capital expenditures.  *So
> long as no Event of Default has occurred and is continuing,
> the Rents remaining after application pursuant to the
> preceding sentence may be retained by Borrower free and
> clear of, and released from, Lender's rights with respect to
> Rents under this Instrument.*

Mortgage, § 3(a), (b) (emphasis added).

The Debtor is correct that the characterization of the rents contradicts itself within the very same subsection.  Subsection (a) begins by stating that the rents are to be assigned absolutely and that rents are *not* among the Mortgaged Property notwithstanding the *express in*clusion of rents in the definition of that term.  *Compare* § 3(a) *with* § 1(s).  Then the subsection addresses the effect of a finding that rents *have not been assigned* to the lender: should that occur, then the rents *are included* in the Mortgaged Property.  It appears, then, that the lender has covered all of its bases.  However, in so doing, the question of what the Debtor's interest (and likewise, 4th Walnut's) in the rents is remains unclear.  By its terms, the subsection would support either reading.

If that is the case, deciding which reading controls requires resort to contract principles. It is a well settled principle of contract construction that terms are construed *contra proferentum*, that is against the drafter. *West Dev. Group, Ltd, v. Horizon Fin. FA*, 405 Pa.Super. 190, 197, 592 A.2d 72, 75 (Pa.Super. 1991); *In re Eastern Continuous Forms*, 302 B.R. 320, 337 (Bankr.E.D.Pa.2003). While the record does not say so expressly, it is safe to assume that as with most lending transactions the form of mortgage was prepared by the lender, here IBC, 4th Walnut's predecessor in interest. *See* Robert A. Thompson and Brian A. Smith, *Negotiating Loan Transactions, Practicing Law Institute, Real Estate Development and Construction Financing*, February 1, 1989, 325 PLI/Real 131, 136 (noting that lender typically use standard form instruments drafted by the their counsel) Thus, applying the *contra proferentum* principle, the assignment of rents provision must be interpreted in the way which favors the Debtor on the question of who owns the rents.

This Court is not the first to deal with an ambiguous assignment of rents provision such as the one presented here. Debtor offers a very recent case out of the United States Bankruptcy Court for the Western District of Tennessee containing strikingly similar facts. *See In re Village Green I, GP*, 435 B.R. 525 (Bankr.W.D.Tenn.2010). In that case, a single asset real estate debtor had executed a deed of trust on behalf of Fannie Mae. The deed of trust contained an assignment of rents provision identical to the one before this Court.[6] Like this Court, the *Village Green*

---

[6] In fact, it appears that the lender in *Village Green* used the identical Fannie Mae form of document to secure its loan. *Compare* Fannie Mae Multifamily Security Instrument - Pennsylvania Form 4039 with Tennessee Form 4044. The language quoted in that case from
(continued...)

8

Court identified the same ambiguity in the assignment of rents provision. To that Court, it was a "one size fits all" approach to protecting the lender's interest in the rents be they deemed the estate's property or its own. Thus, it would delve further into the document to determine which reading—rents as assigned versus rents as pledge—was more likely intended. To reach that finding that Court began with the prefatory paragraph in which the "Mortgaged Property" was pledged "TO SECURE TO LENDER" to repay the loan. 435 B.R. at 535 (capitalization in original).[7] Just as in the instant case, rents are listed in the definition of "Mortgaged Property." Yet, the Court observed, § 3(a) begins by excluding rents from Mortgaged Property for purposes of an assignment of rents and then does an about-face on that point in the event such assignment is found to be ineffective. *Id*. Thus the Court would find the two provisions—set forth within the same subsection—to be irreconcilable. *Id*. at 536.

From there, the *Village Green* Court pressed on to subsection (b) of § 3 to see if a clearer construction of the rent provision could be made. *Id*. There, it observed that while the rents themselves may at first appear to have been conveyed to Fannie Mae, the debtor was given a license collect those rents. *Id*. So long as the debtor was not in default, this provision goes on, the debtor was entitled to retain any rent remaining after having made the monthly payments and other required payments under the note. *Id*. That provision, the Court concluded, did not support a finding of an absolute and

---

[6](...continued)
the instrument's definitions and assignment of rents provisions is identical to the language of the instrument in the case *sub judice*.

[7]The identical capitalization appears in the instant Multifamily Mortgage.

unconditional assignment of rents. *Id*. Accordingly, the *Village Green* Court found that the Deed of Trust granted to Fannie Mae a security interest in the rents, as opposed to the rents themselves. *Id.* at 538.

It bears repeating that the same provisions regarding assignment of rents in *Village Green* appear in the instant Mortgage and are set forth *verbatim*. Given that there are no other qualifying factors, this circumstance alone renders the *Village Green* opinion highly persuasive. Indeed, the value of the *Village Green* opinion lies in large part in its fidelity to fundamental principles of contract construction. It looked to every part of the Deed of Trust to construe intent. Certain provisions were self-contradictory and effectively canceled each other out, while others, such as the inclusion of rents in the definition of Mortgaged Property and the retention of the debtor of any rent after paying the monthly installment due on the note, evinced enough of an intent to allow the Court to base its finding that Fannie Mae had no more than a security interest in the rents. This Court does not see why a different result should not obtain in the case *sub judice*. For that reason, the Court finds that 4th Walnut has a security interest in the rents and, as a corollary, that the rents are cash collateral the use of which is subject to the strictures of Code § 363.

*Did 4th Walnut Enforce*
*its Interest in the Rents?*

Having found that 4th Walnut holds a lien on the Debtor's rents, the Court turns to Debtor's next argument: that 4th Walnut may have perfected[8] that lien prior to

---

[8]The parties do not dispute that the mortgage which contains the assignment of rents was duly recorded.

bankruptcy but it failed to enforce it. The difference between perfection and enforcement in this context is crucial. *See Mountainview, supra*, 5 F.3d at 39 (discussing difference between perfection of lien in rents and enforcement of that lien). This Court itself has on a prior occasion dealt with a related issue and its analysis of what is required in the way of enforcement is apposite:

> If the mortgagor is in default, "enforcement" of the mortgagee's right to receive rents, even when the mortgage contains an assignment of rents provision, can only be accomplished by the mortgagee taking possession of the mortgaged property and applying the profits to the mortgage until the debt is paid. *Mountain View,* 5 F.3d at 38, *citing Bulger v. Wilderman and Pleet*, 101 Pa.Super. 168, 171 (Pa.Super.1931); *accord, SeSide,* 152 B.R. at 883, citing *Randal,* 306 Pa. at 6, 158 A. at 866; *Peoples-Pittsburgh Trust Co. v. Henshaw,* 141 Pa.Super. 585, 592, 15 A.2d 711, 714 (1940). "A mortgagee can obtain 'possession' of realty and *consequently obtain a present right to receive rents* in two ways: (1) by entering into 'actual possession' of the real estate through foreclosure or acting as a mortgagee in possession; or (2) by taking 'constructive possession' of the realty by *serving demand notices on the mortgagor's tenants.*" *SeSide,* 152 B.R. at 883 (emphasis added), citing *Fogarty v. Shamokin & Mount Carmel Transit Co.,* 367 Pa. 447, 451, 80 A.2d 727, 728-29 (1951); *Colbassani v. Society of Christopher Columbus,* 159 Pa.Super. 414, 417, 48 A.2d 106, 107 (1946); *Bulger v. Wilderman and Pleet,* 101 Pa.Super. at 176-77; *accord, Mountain View,* 5 F.3d at 38. In other words, until a mortgagee enforces its rights to rentals by taking "possession" of the mortgaged property, the mortgagee has no present rights to rents under Pennsylvania law, and a mortgagor is entitled to continue receiving the rents from the property. *See SeSide,* 152 B.R. at 883, citing *Randal,* 306 Pa. at 5, 158 A. at 865-66; *Colbassani,* 159 Pa.Super. at 417, 48 A.2d at 107; *Miners Sav. Bank of Pittston v. Thomas,* 140 Pa.Super. 5, 8, 12 A.2d 810, 813 (1940). This is so even though the mortgagee has a valid and enforceable interest in lien on the rental income stream. *Mountain View,* 5 F.3d at 38.

*In re D'Anna*, 177 B.R. 819, 824-825 (Bankr.E.D.Pa. 1995) (emphasis added); *see also Sovereign Bank v. Schwab,* 414 F.3d 450, 453 (3d Cir.2005) (holding that bank enforced its interest in rents by sending notice to tenants that it would be collecting the rents); *Union Meeting Partners v. Lincoln Nat. Life Ins. Co. (In re Union Meeting Partners)*, 163 B.R. 229, 236 (Bankr.E.D.Pa.1994) ("If the mortgage becomes in default, the mortgage can destroy the mortgagor's right to the rents by suing out the mortgage, by bringing ejectment, or by giving the tenant formal notice to pay the mortgage.") *quoting Colbassani v. Society of Christopher Columbus*, 159 Pa.Super. 414, 416, 48 A.2d 106, 107 (1946); *see also In re Dupell,* 235 B.R. 783, 791 (Bankr.E.D.Pa.1999) ("A mortgagee is permitted to come into constructive possession of premises by sending notification of the mortgagor's breach to the tenants, informing them of the assignment of rents, and requesting direct payment of the rent to the mortgagee."); *Matter of Foxcroft Square*, 178 B.R. 659, 664 (E.D.Pa.1995). What does the record show in the way of the lender having taken possession of the rents?

*Default, Foreclosure and
the January 29 Meeting*

On November 13, 2009, Sovereign declared the Debtor in default under the loan. L-7. On December 4 and 31, 2009, it exercised its right to the rents by sending letters to the Debtor's subtenants[9] directing them to henceforth make their rent payments to Sovereign. *See* D-3 (January 29 letters explaining that Sovereign sent rent demand letter to the subtenants). At this point, then, it appears that Sovereign did what it

---

[9]The Court uses the term *sub*tenants in referring to the occupants of the apartments as the parties do. This is because the Debtor's "tenant" is Greentree pursuant to the Master Lease Agreement.

12

needed to do in order to enforce its interest in the rents.

That, however, was not the end of events. On January 29, 2010 Sovereign filed a foreclosure complaint which prompted a meeting between the Debtor and Sovereign on that very same day. It is the Debtor's position—and this is disputed by 4th Walnut—that the parties reached a forbearance agreement whereby the rents would go back to the Debtor who would pay expenses associates with the real estate and remit the remainder to Sovereign.[10]  Whether an agreement was reached or not, letters of the same date were hand-delivered to the Debtor's subtenants instructing them to resume making their monthly rental payments to the Debtor. D-3. These letters were signed by Sovereign's counsel and a representative of the Debtor. *Id*. The letters had their intended effect: subtenants resumed paying their rent to the Debtor's management company.[11] The Debtor, in turn, used those rents to pay monthly expenses and then to remit the remainder to Sovereign.[12] This, the Debtor says, was all part and parcel of the agreement reached at the parties' January 29 meeting.

---

[10]Debtor also maintains that there was agreement as to the applicable interest rate, the term of this forbearance, and the withdrawal of the foreclosure proceeding. None of this however is germane to the court's present analysis.

[11]Despite the January 29 joint letter, some subtenants continued to send their rent to Sovereign. *See* D-5, Letter of 3/9/10 from Debtor's counsel mentioning in paragraph 4 that Sovereign had received some rent payments.

[12]For February through April, 2010 the Debtor would send to Sovereign a monthly income and expense report, a bank statement, a check register along with the remainder of the rent which it had collected each month. In other words, it provided an accounting for the rent collected and used for that time period. *See* D-5, D-7.

*Effect of the*
*January 29 Letters*

To the extent that any such agreement was reached, 4th Walnut retorts, it would be barred by the Statute of Frauds. But aside from whether those parties reached an accord—enforceable or otherwise[13]—Sovereign's own acts indicate to the Court that the bank rescinded its earlier demand notices to the subtenants for their rental payments.[14] In other words, after having enforced its security interest in the rents in December 2009, Sovereign appears to have reversed course and ceased enforcing that interest. From the date of the January 29 letter, the right of the Debtor to collect the rents appears to have been restored to it. That right was unaffected by 4th Walnut's July 2 and 22 letters: the July 2 letters informed Debtor and Greentree[15] that 4th Walnut now held the loan, declared a default, and demanded the rents, but it did not inform the Debtor's subtenants that they should henceforth start paying their rent to 4th Walnut. *See* L-11, L-12. Likewise, the July 22 letter made another demand for the rents upon Greentree, not upon its subtenants. *See* L-13. The Debtor continued to collect the rents when it commenced this bankruptcy case on July 23, 2010. On that same day, 4th Walnut sent its own letter to the subtenants demanding the rents (4th Walnut's Brief,

---

[13] 4th Walnut also argues here that there is a failure of consideration and that there was no agreement on all essential terms of a contract. These alternative arguments, the applicability of the Statute of Frauds and the failure of consideration and mutual assent, would be otherwise implicated, however, given the Court's present ruling, it is unnecessary to evaluate them herein. They have been joined and will be fully discussed in this Court's ruling on 4th Walnut's Motion to Dismiss Adversary Proceeding No. 10-456, *400 Walnut Associates, L.P. v. 4th Walnut Associates, L.P., et al.* A hearing on said Motion was held on February 10, 2011.

[14] It also undisputed that Sovereign never took possession of the realty.

[15] Privity as between the lender and Greentree is established by the Lender's Subordination, Nondisturbance and Attornment Agreement. *See* L-6.

14

p.4, ¶ 18); however, they did so in violation of the bankruptcy stay. Accordingly, the rents remain property of the estate for this reason as well.

*Summary*

The Court finds that the rents remain property of the Debtor's bankruptcy estate for two reasons. The Mortgage failed to effect an absolute assignment of the Debtor's rents leaving the lender with only a security interest in that property. Further, on the date of the bankruptcy filing, 4th Walnut had not enforced its right to attach those rents. For that reason, the rents constitute cash collateral which the Debtor may use on the condition that it provide adequate protection of 4th Walnut's interest therein.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>February 22, 2011</u>