IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>400 WALNUT ASSOCIATES, L.P.<br><br>Debtor. | ) Chapter 11<br>)<br>) Case No. 10-16094 (SR)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF
4TH WALNUT ASSOCIATES, L.P.'S MOTION FOR RECONSIDERATION
OF THE COURT ORDER AND OPINION DATED FEBRUARY 22, 2011**

DATED: March 9, 2011

**KLEHR HARRISON HARVEY
BRANZBURG LLP**

Francis M. Correll, Jr., Esquire
Domenic E. Pacitti, Esquire
Margaret M. Manning, Esquire
1835 Market Street, Suite 1400
Philadelphia, PA 19103
(215) 569-2700 (Telephone)
(215) 568-6603 (Facsimile)

and

919 Market Street, Suite 1000
Wilmington, DE 19801
(302) 426-1189 (Telephone)
(302) 426-9193 (Facsimile)

Attorneys for 4th Walnut Associates, L.P

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................iii

BACKGROUND ............................................................................................................... 1

      A.      The Underlying Loan Transaction ........................................................................ 1

      B.      The Debtor's Loss of Rights Under the Master Lease ................................ 2

      C.      Termination of the Master Lease and the Debtor's Bankruptcy Filing ......... 3

LEGAL DISCUSSION ....................................................................................................... 6

      A.      The Standard of Review for a Motion for Reconsideration ......................... 6

      B.      The Rents Are Not Cash Collateral Because the Debtor Had No
Interest In Those Rents on the Petition Date ............................................... 7

            1.      The Legal Standard Relating To Determination Of
Whether Rents Are Cash Collateral .................................................. 7

            2.      The Debtor Had No Interest in the Rents on the Petition Date ......... 10

CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Broadcast Music, Inc., et al., v. La Trattoria East, Inc. d/b/a Trattoria East,*
  1995 WL 552881 (E.D.Pa. 1995) ........................................................................................ 5

*Commerce Bank v. Mountain View Village, Inc.*,
  5 F.3d 34 (3d Cir. 1993) ("*Mountain View*") ........................................................... 6, 7, 8, 9

*In re Dupell*,
  235 B.R. 783 (Bankr. E.D. Pa. 1999) ................................................................................ 6

*In re Foxcroft Square Company*,
  178 B.R. 659 (Bankr. E.D. Pa. 1995) ................................................................................ 9

*In re Ignatius D'Anna*,
  177 B.R. 819 (Bankr. E.D. Pa. 1995) ............................................................................. 8, 9

*In re Lyondell*,
  2005 WL 883485 (S.D.N.Y. 2005) .................................................................................... 5

*In re National Forge Company, et al.*,
  326 B.R. 532 (WD Pa. 2005) ............................................................................................ 5

*In re SeSide Company, Ltd.*,
  152 B.R. 878 (E.D. Pa. 1993) ........................................................................................... 9

*In re Shallcross*,
  82 F. 2d 690 (3d Cir. 1936) .............................................................................................. 9

*In re Union Meeting Partners*,
  163 B.R. 229 (Bankr. E.D. Pa. 1994) ................................................................................ 9

*Public Interest v. Magnesium Elecktron*
  123 F.3d 111 (3d. Cir 1997) .............................................................................................. 5

*Sovereign Bank v. Schwab*,
  414 F. 3d 450 (3d Cir. 2005) ......................................................................................... 2, 8

*US v. US Gypsum*,
  333 U.S. 364 (1948) ........................................................................................................... 5

**STATUTES**

11 U.S.C. § 363(a) ........................................................................................................... 6

11 U.S.C. § 363(c) .................................................................................................................. 4

**OTHER AUTHORITIES**

Fed.R.Bankr.P. 4001 ............................................................................................................. 4

I. **BACKGROUND**

    A. **THE UNDERLYING LOAN TRANSACTION**

1. On or about May 29, 2002, 400 Walnut Street Associates, L.P., the above-captioned debtor and debtor-in-possession (the "Debtor"), entered into a lease (as amended, the "Master Lease") as landlord, with 400 Walnut Greentree Associates, L.P. ("Greentree") as tenant, to lease all of the property known as and located at 400-414 Walnut Street, Philadelphia, Pennsylvania (the "Property").

2. On February 20, 2004, Independence Community Bank ("ICB") made a loan, in the original principal amount of $13,125,000.00 (the "Loan"), to the Debtor.

3. The Loan was memorialized by, among other things, a Multifamily Note in the original principal amount of $13,125,000.00, and also dated February 20, 2004 (the "Note").

4. The Loan was further secured by that certain Multifamily Mortgage, Assignment of Rents and Security Agreement (the "Mortgage") encumbering the Property, which Mortgage was made, executed and delivered to ICB by the Debtor on or about February 20, 2004 and duly recorded in the Office of the Philadelphia County Recorder of Deeds on February 25, 2004, as Instrument Number 50875243.

5. On February 20, 2004, Greentree, the Debtor and IDC entered into a Lender's Subordination, Nondisturbance and Attornment Agreement (the "SNDA").

6. The Note, the Mortgage, the SNDA and all documents executed in connection therewith, or pursuant thereto, are referred to collectively hereinafter as the "Loan Documents."

7. Included as part of the Mortgage is an Assignment of Rents ("Assignment of Rents"), which encompasses all Rents (as defined in the Mortgage) generated from the Property (the "Rents").

8. In 2006, Sovereign Bank ("Sovereign") acquired ICB and succeeded to ICB's interests and, in 2009, subsequent to defaults by the Debtor, exercised its rights under the Assignment of Rents provision in the Loan Documents to demand that all tenants at the Property pay their rent directly to Sovereign.

9. In November 2009, Sovereign formally declared the Loan to be in default, and in December 2009 exercised its rights under the Assignment of Rents provisions in the Loan Documents to demand that all tenants at the Property pay their rent directly to Sovereign (the "Sovereign Demand Notice"). On January 29, 2010, Sovereign also filed a Complaint in Mortgage Foreclosure against Debtor in the Philadelphia County Court of Common Pleas (the "Foreclosure Action").

10. In June 2010, Sovereign sold and assigned to 4th Walnut the Loan, Note, Guarantee, Mortgage and all related Loan Documents.

11. On July 2, 2010, 4th Walnut sent Greentree a notice (the "Greentree Demand Notice"): (a) informing Greentree of the Debtor's default; (b) informing Greentree of the revocation of the Debtor's license to collect Rents; and (c) demanding payment by July 16, 2010 of all Rents owed or to be owed by Greentree under the Master Lease.

12. However, Greentree made no payments to 4th Walnut.

B. **THE DEBTOR'S LOSS OF RIGHTS UNDER THE MASTER LEASE**

13. Under the terms of the SNDA, the exercise by 4th Walnut's predecessor-in-interest, Sovereign, of the Assignment of Rents in November 2009, the commencement by Sovereign of a mortgage foreclosure action on January 29, 2010, and/or the exercise (the "Rent Exercise") by 4th Walnut of the Assignment of Rents (among other things) pursuant to the 4th Walnut Demand Notice and/or the Greentree Demand Notice each constitutes a "Transfer" such that the Master Lease was, as of November 2009, or, if not then, by January 29, 2010, or, if not

then, at the latest, as of the date of 4th Walnut's Demand Notice, considered to be a direct lease between 4th Walnut and Greentree, <u>divesting the Debtor of any interest in the Master Lease and in any Rents generated by the Property</u>.

14. Accordingly, as of July 2, 2010, at the latest, the Debtor had no rights under the Master Lease and did not have any control over the Master Lease or any rights to collect Rents from Greentree or any subtenants.

15. As of that date, therefore, the Master Lease, the rental income under the Master Lease, the right to affect Greentree's ability to collect Rents from subtenants, and the right to make demand upon and collect Rents from subtenants, all resided exclusively with 4th Walnut. Any actions taken by the Debtor after that date are irrelevant and a nullity.

16. In the Court's opinion [D.I. No. 98] (the "<u>Opinion</u>"), the Court did not address this issue and, we respectfully submit, incorrectly concluded that since 4th Walnut did not notice the <u>subtenants</u> prior to the Debtor's bankruptcy filing, 4th Walnut did not exercise possession of the rents.

17. The correct analysis regarding the rents issue should focus on the Master Lease and 4th Walnut's actions with regard to the Master Lease.

C.   **TERMINATION OF THE MASTER LEASE AND THE DEBTOR'S BANKRUPTCY FILING**

18. On July 22, 2010, as the party controlling the Master Lease, 4th Walnut sent a letter (the "<u>Termination Letter</u>") to Greentree and the Debtor terminating the Master Lease (the "<u>Master Lease Termination</u>").

19. On July 23, 2010, 4th Walnut sent letters to all subtenants at the Property notifying them of the Rent Exercise and the Master Lease Termination, and demanding payment of all Rents owed or to be owed under the subtenants' leases (the "<u>Subtenant Notices</u>").

PHIL1 1419876-3                                    3

20. On July 23, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

21. Because the Debtor had lost all rights in the Master Lease as of July 2, 2010, at the latest, the Debtor's bankruptcy filing had no effect upon 4th Walnut's right to send, or the effectiveness of, the Subtenant Notices.

22. As of the Petition Date, the Debtor was indebted to 4th Walnut in the total sum of $15,267,261.00 (including interest and late charges) plus attorneys' fees and costs.

23. Also on the Petition Date, the Debtor filed its Motion for an Order (I) Pursuant to 11 U.S.C. § 363(c) and Fed.R.Bankr.P. 4001, Authorizing Debtor to Use Cash Collateral and Provide Adequate Protection and (II) Granting Other Related Relief (the "Cash Collateral Motion").

24. Several orders have been entered by this Court authorizing the Debtor's use of cash collateral and reserving all rights of 4th Walnut to dispute whether the cash collateral is property of the Debtor.

25. On September 20, 2010, 4th Walnut filed its (A) Objection to the Debtor's Motion for an Order (I) Pursuant to 11 U.S.C. § 363(c) and Fed.R.Bankr.P. 4001 Authorizing the Debtor to Use Cash Collateral and Provide Adequate Protection and (II) Granting Other Related Relief; and (B) Cross Motion to Prohibit Use of Rents, to Compel Debtor to Segregate Rents and for an Accounting (the "Cross Motion") [D.I. No. 81], to which the Debtor responded on October 15, 2010 [D.I. No. 90].

26. On February 22, 2011, this Court entered an Order and filed a related Opinion (the "Opinion") wherein the Court determined that the Assignment of Rents was not an absolute assignment but rather a pledge of collateral providing 4th Walnut with only a security interest in

that property. The Court also determined that the Lender did not exercise its right to take control of the rents in a timely fashion since it did not enforce its rights to collect those rents prior to the debtor filing its bankruptcy petition.

27.     However, in the Opinion, the Court does not address the seminal issue of the Master Lease and the effect of 4th Walnut's July 2 Notice and July 22 Notice, which 4th Walnut contends perfected 4th Walnut's interest in the Rents.

## II.    LEGAL DISCUSSION

### A.    THE STANDARD OF REVIEW FOR A MOTION FOR RECONSIDERATION

28.     Reconsideration is appropriate as a mechanism by which to "correct manifest errors of law or fact or to present newly discovered evidence." *In re National Forge Company, et al.*, 326 B.R. 532, 541 (WD Pa. 2005). See also, *Broadcast Music, Inc., et al., v. La Trattoria East, Inc. d/b/a Trattoria East,* 1995 WL 552881 (E.D.Pa. 1995).

29.     This Circuit has recognized several "extraordinary circumstances" that warrant a court's reconsideration of an issue decided earlier in the course of litigation. They include situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice. *Public Interest v. Magnesium Elecktron* 123 F.3d 111, 116-117 (3d. Cir 1997).

30.     The Supreme Court has held that a finding is "clearly erroneous" if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *In re Lyondell*, 2005 WL 883485, *3 (S.D.N.Y. 2005). See also, *US v. US Gypsum*, 333 U.S. 364, 395 (1948).

31.     In the instant matter, 4th Walnut believes that the instant Motion for Reconsideration should be granted since it appears the Court did not consider 4th Walnut's

PHIL1 1419876-3                              5

contention that as a result of the default under the Master Lease, the Debtor was divested of any interest in the Master Lease and in any Rents generated by the Property prior to the Debtor's filing its bankruptcy petition.

### B. THE RENTS ARE NOT CASH COLLATERAL BECAUSE THE DEBTOR HAD NO INTEREST IN THOSE RENTS ON THE PETITION DATE

#### a. *The Legal Standard Relating To Determination Of Whether Rents Are Cash Collateral*

32. 11 U.S.C. § 363(a) provides:

> In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

33. Therefore, by this definition, the Debtor must have an interest in the cash or other relevant property in question for that cash or property to qualify as cash collateral.

34. "As is uniformly acknowledged, the treatment of rents in bankruptcy is to be determined by state law." *In re Dupell*, 235 B.R. 783 (Bankr. E.D. Pa. 1999) (citing *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914 (1979)). Pennsylvania is a "title theory" as opposed to "lien theory" state, which means mortgages in Pennsylvania are considered conveyances in fee simple to the creditor. *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34 (3d Cir. 1993) ("*Mountain View*").

35. In *Mountain View*, the Third Circuit considered a mortgagor/debtor's right to use rents from mortgaged property as cash collateral. Mountain View was the owner of an apartment

PHIL1 1419876-3          6

complex that issued Harris Savings Bank ("Harris") and Commerce Bank ("Commerce") mortgages on various phases of the apartment project. The Harris mortgages included absolute assignments of rents and were properly recorded; Commerce was granted an assignment of rents separate from the mortgage, but properly recorded both documents. When Mountain View defaulted on the mortgages, Harris notified the tenants of the default, began to collect rents and eventually entered a judgment in foreclosure and "occupied the premises to the exclusion of Mountain View." *Id.* at 36. Commerce also took possession of the phase of the project in which it held a mortgage, began to collect rents and entered a judgment in foreclosure. Before a sheriff's sale could take place, Mountain View filed for bankruptcy protection and moved against Harris and Commerce for use of cash collateral. The bankruptcy court held that the debtor retained an equitable interest in the rents and allowed the use of cash collateral. The banks appealed. The District Court held that the rents were not property of the estate and reversed the bankruptcy court; the debtor appealed.

36. Pennsylvania follows the title theory of mortgages, where the mortgage is treated as though conveying legal title of the property. As such, the Third Circuit recognized that "if the owner is in default, the mortgagee may enforce the mortgage provision that conveys rents to him by peacefully entering the premises and taking the profits until the debt is paid…'The equivalent of entry may be obtained by the mortgagee making demand on the tenants for the rent…and payment of the same by them.'" *Id.* at 38 (citations omitted). "In the case at hand, because the mortgages included assignments of rents, the banks' rights do not depend on whether the leases preceded the mortgages or followed them." *Id.*

37. Therefore, in a title theory jurisdiction such as Pennsylvania, a mortgagee may take either "actual" or "constructive" possession of the property and demand rents from the

PHIL1 1419876-3                                                7

tenants. An assignment of rents allows the mortgagee to take possession regardless of whether the mortgage was granted before or after the leases were entered into. Accordingly, the Third Circuit in *Mountain View* concluded "that the banks took the necessary and appropriate steps to enforce their rights under the mortgage, and that title to the rents and profits, therefore, became theirs." *Id.* at 39.

38. In another Third Circuit case that addressed the issue, *Sovereign Bank v. Schwab*, 414 F. 3d 450 (3d Cir. 2005), the Court, drawing parallels to *Mountain View*, held that a mortgagee who sent demand notices to tenants upon debtor's pre-petition default took title to the rents by sending the notices, so the debtor had no interests in the rents at the time the petition was filed. In that case, Sovereign held mortgages in several rental properties and was appointed receiver of the properties when the mortgagor defaulted. A month after the mortgaged properties were sold to the bank for cost at a sheriff's sale, the mortgagor filed a Chapter 7 petition, and the trustee commenced an adversary proceeding seeking turnover of the rental funds collected by Sovereign, claiming that the bank only took control of the property of a custodian rather than as owner, therefore legal interest did not transfer. The Third Circuit held that Sovereign's status as receiver did not affect its properly asserted rights to the rents. "The bank held title to the rents by enforcing its rights under the mortgage." *Id.* at 455.

39. In *In re Ignatius D'Anna*, 177 B.R. 819 (Bankr. E.D. Pa. 1995), Your Honor similarly held that "under Pennsylvania law the recording of a mortgage containing an assignment of rents clause 'give[s] the mortgagee an effective security interest in 'rents' *as a type of collateral as opposed to a security interest in specific rent payments*." *Id.* at 823-824 (emphasis provided) (citations omitted). "If the mortgagor is in default, 'enforcement' of the mortgagee's right to receive rents, even when the mortgage contains an assignment of rents

PHIL1 1419876-3                                                8

provision, can only be accomplished by the mortgagee taking possession of the mortgaged property and applying the profits to the mortgage until the debt is paid…In other words, until a mortgagee enforces its rights to rentals by taking 'possession' of the mortgaged property, the mortgagee has no present rights to rents under Pennsylvania law, and a mortgagor is entitled to continue receiving the rents from the property." *Id.* at 824-825. With respect to the question of notice to the tenants, the Court explained "to the extent that [mortgagee] is able to establish issuance of its rent demand notices, the moneys [that were] collected from the Debtor's tenants after the rent demand notices were issued belong to the [mortgagee]…Conversely, to the extent the [mortgagee] fails to establish that notices were issued, since the Debtor had the right to receive the rents under Pennsylvania law, the Debtor had the rights to use those rents…" *Id.* at 825. *See, also, In re Union Meeting Partners*, 163 B.R. 229 (Bankr. E.D. Pa. 1994) ("an interest of the Debtor in property was transferred at the time [the mortgagee] sent the rent demands to the Debtor's tenants"); *In re Shallcross*, 82 F. 2d 690 (3d Cir. 1936) (mortgagee gains right to demand rents upon obtaining actual or constructive possession); *In re Foxcroft Square Company*, 178 B.R. 659 (Bankr. E.D. Pa. 1995) (same); *In re SeSide Company, Ltd.*, 152 B.R. 878 (E.D. Pa. 1993) (same).

### b.    *The Debtor Had No Interest in the Rents on the Petition Date*

40.    Based on these controlling legal standards, the Debtor has had no rights in the Master Lease and, therefore, no interest in the Rents, since prior to the Petition Date. Those Rents cannot therefore qualify as cash collateral.

41.    In the instant case, the facts are similar to *Mountain View*: the Debtor/mortgagor defaulted on its mortgage, the lender/mortgagee took constructive possession of the mortgaged property and presented the tenant(s) with rent demand notices prior to the Debtor filing for

PHIL1 1419876-3                                                9

bankruptcy protection. Therefore, the same result logically follows, and the interests of the mortgagee, in this case, 4th Walnut, in the Rents prevails.

42. In addition to Sovereign initiating the proceedings to take actual notice of the Property via the Foreclosure Action, all subsequent notifications to the Debtor, Greentree and the subtenants constitute constructive possession.

43. As described above, and as acknowledged by the Debtor, several notices were given to the Debtor on several occasions before the Petition Date. By the Petition Date, therefore, the Debtor's interests in the Rents had already been terminated.

44. Specifically:

- On July 2, 2010, 4th Walnut provided Debtor with the 4th Walnut Demand Notice, which, among other things: (a) notified the Debtor that the Debtor's license to collect Rents from the Property was revoked; and (b) demanded the immediate turnover of all Rents in possession of the Debtor;

- Under the terms of the SNDA, the exercise by 4th Walnut of the Assignment of Rents pursuant to the 4th Walnut Demand Notice constituted a "Transfer" such that the Master Lease was, at the latest, as of July 2, 2010 (the date of 4th Walnut's Demand Notice) considered to be a direct lease between 4th Walnut and Greentree, divesting the Debtor from any interest in that Master Lease or to the Rents derived from the Master Lease (which included the Rents collected by Greentree from subtenants);

- Also on July 2, 2010, 4th Walnut sent Greentree the Greentree Demand Notice: (a) informing Greentree of the Debtor's default; (b) informing Greentree of the revocation of the Debtor's license to collect Rents; and (c) demanding payment by July 16, 2010 of all Rents owed or to be owed by Greentree under the Master Lease;

- The Greentree Demand Notice is an additional "Transfer" under the terms of the SNDA;

- Greentree made no payments to 4th Walnut, and 4th Walnut subsequently, on July 22, 2010, terminated the Master Lease.

45. Accordingly, as of July 2, 2010, at the latest, the Debtor had no interest in the Master Lease, in the various subtenant leases, and did not have any control over the Master Lease or subtenant leases, or any rights to collect Rents from Greentree or any subtenants.

46. As of July 2, 2010, therefore, the Master Lease, the rental income under the Master Lease, the rights to resolve Greentree's ability to collect Rents from subtenants, and the rights to make demand upon and collect Rents from subtenants, all resided exclusively with 4th Walnut. Any actions taken by the Debtor after that date are irrelevant and a nullity as to the Rents.

47. Because the Debtor had lost all interests in Rents (whether under the Master Lease or subtenant leases) from the Property well before the Petition Date, the Rents cannot constitute cash collateral. To the contrary, those Rents belong exclusively to 4th Walnut.

### III. CONCLUSION

48. This Court should grant 4th Walnut's Motion for Reconsideration, determine that the Debtor had no interest in the Rents as of the Petition Date, and conclude that the Debtor should not be permitted to use the Rents and deny the Debtor's Motion for Use of Cash Collateral.

DATED: March 9, 2011    **KLEHR HARRISON HARVEY BRANZBURG LLP**

By:   /s/ Margaret M. Manning
Francis M. Correll, Jr., Esquire
Domenic E. Pacitti, Esquire
Margaret M. Manning, Esquire
1835 Market Street, Suite 1400
Philadelphia, PA 19103
(215) 569-2700 (Telephone)
(215) 568-6603 (Facsimile)
           and
919 Market Street, Suite 1000

          Wilmington, DE 19801
          (302) 426-1189 (Telephone)
          (302) 426-9193 (Facsimile)

          Attorneys for 4th Walnut Associates, L.P.